**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BULGARI, S.p.A.,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | Case No. 26-cv-00467 |

**COMPLAINT**

Plaintiff Bulgari, S.p.A. ("Bulgari" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, on information and belief, have sold products using infringing and counterfeit versions of Bulgari's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Bulgari substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Bulgari to combat e-commerce store operators who trade upon Bulgari's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Bulgari's federally registered trademarks (the "Counterfeit BVLGARI Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit BVLGARI Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Bulgari is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit BVLGARI Products over the Internet. Bulgari has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Plaintiff Bulgari, S.p.A. is an Italian corporation with its principal place of business at Lungotevere Marzio, 11, Rome, Italy.

5. Bulgari was founded by Sotirio Bulgari in 1884. In 1905, Sotirio Bulgari, along with his sons, Constantino and Giorgio, opened a shop in via Condotti where the Bulgari flagship store is located today. From its modest beginnings, Bulgari has grown to become one of the world's largest jewelers.

6. Bulgari's BULGARI trademark has been used in the United States for fine jewelry products and luxury watches since 1970. Bulgari's trademarks, including BULGARI and BVLGARI, have become synonymous with luxurious and elegant products and services.

7. Bulgari's first international retail location was in New York City. The BVLGARI brand is now highly successful and well known throughout the United States.

8. Among Bulgari's most important assets is the intellectual property associated with its BVLGARI brand. Specifically, Bulgari owns numerous U.S. trademark registrations for its BVLGARI brand name, as well as other marks used to identify the jewelry and watch designs that it markets and sells. Bulgari also owns U.S. copyright registrations covering many of its unique and innovative jewelry and watch designs. Finally, Bulgari is the owner of U.S. design patents covering certain designs of its unique jewelry and watches.

9. Bulgari is an internationally recognized manufacturer, distributor, and retailer of luxury watches, jewelry, and accessories, all of which prominently display its famous, internationally recognized, and federally registered trademarks, including BVLGARI and BULGARI (collectively, the "BVLGARI Products"). BVLGARI Products have become

enormously popular and even iconic, driven by Bulgari's arduous quality standards and innovative design. Among the purchasing public, genuine BVLGARI Products are instantly recognizable as such. In the United States and around the world, the BVLGARI brand has come to symbolize high quality and BVLGARI Products are among the most recognizable watches, jewelry, and accessories in the world.

10. BVLGARI Products are distributed and sold to consumers through Bulgari boutiques, authorized retailers throughout the United States, such as Saks Fifth Avenue, Neiman Marcus, and Nordstrom, and online at us.bulgari.com. A Bulgari boutique is located at 909 N. Michigan Avenue in Chicago's exclusive Magnificent Mile shopping district.

11. Bulgari incorporates a variety of distinctive marks in the design of its various BVLGARI Products. As a result of its longstanding use, Bulgari owns common law trademark rights in its BVLGARI Trademarks. Bulgari has also registered its trademarks with the United States Patent and Trademark Office. BVLGARI Products typically include at least one of Bulgari's registered trademarks. Often, multiple Bulgari marks are displayed on a single product. Bulgari uses its trademarks in connection with the marketing of its BVLGARI Products, including the following marks which are collectively referred to as the "BVLGARI Trademarks."

| **Registration Number** | **Trademark** |
|---|---|
| 1,184,684 | BULGARI |
| 1,682,863<br>1,693,893<br>1,694,038<br>1,694,380<br>1,736,428<br>1,826,133<br>1,848,470<br>2,102,804 | BVLGARI |
| 2,837,806 | B.ZERO1 |

| | |
|---|---|
| 3,073,799 | ASSIOMA |
| 3,329,746 | PARENTESI |
| 3,520,949 | DIAGONO |
| 4,762,595 | LVCEA |
| 5,173,735 | INCONTRO D'AMORE |
| 2,783,515 | BVLGARI |
| 2,954,459 | BVLGARI |
| 3,505,546 | BVLGARI |
| 5,061,427 |  |
| 5,299,131 |  |
| 5,697,708 | SERPENTI |
| 5,652,125 | FIOREVER |
| 5,477,663 | DIVAS' DREAM |

12. The above U.S. registrations for the BVLGARI Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The BVLGARI Trademarks have been used exclusively and continuously by Bulgari, some since at least as early as 1970, and have never been abandoned. The registrations for the BVLGARI Trademarks constitute *prima facie* evidence of their validity and of Bulgari's exclusive right to use the BVLGARI Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the above-listed BVLGARI Trademarks are attached hereto as **<u>Exhibit 1</u>**.

13. The BVLGARI Trademarks are exclusive to Bulgari and are displayed extensively on BVLGARI Products and in Bulgari's marketing and promotional materials. BVLGARI Products have long been among the most popular luxury watches, jewelry, and accessories in the world and have been extensively promoted and advertised at great expense. In fact, Bulgari has expended millions of dollars annually in advertising, promoting, and marketing featuring the BVLGARI Trademarks. BVLGARI Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and are renowned as desired luxury items. For example, BVLGARI Products are often seen at star-studded red-carpet events, such as the annual Academy Awards and the Cannes Film Festival. Bulgari augments this unsolicited media coverage with extensive paid advertising featuring internationally-known celebrities and models, including Bella Hadid and Lily Aldridge in upscale luxury magazines worldwide such as *Elle* and *Vogue*. Because of these and other factors, the Bulgari name and the BVLGARI Trademarks are famous throughout the United States.

14. The BVLGARI Trademarks are distinctive when applied to the BVLGARI Products, signifying to the purchaser that the products come from Bulgari and are consistent with Bulgari's quality standards. Whether Bulgari manufactures the products itself or licenses others to do so, Bulgari has ensured that products bearing its trademarks are manufactured to the highest quality standards. The BVLGARI Trademarks have achieved tremendous fame and recognition which has only added to the distinctiveness of the marks. As such, the goodwill associated with the BVLGARI Trademarks is of incalculable and inestimable value to Bulgari.

15. Since at least as early as 1998, Bulgari has operated a website where it promotes and sells genuine BVLGARI Products at us.bulgari.com. Sales of BVLGARI Products via the

us.bulgari.com website represent a significant portion of Bulgari's business. The us.bulgari.com website features proprietary content, images, and designs exclusive to Bulgari.

16. Bulgari has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting the BVLGARI Trademarks. As a result, products bearing the BVLGARI Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Bulgari. Bulgari is a multi-million-dollar operation and BVLGARI Products have become among the most popular of their kind in the U.S. and the world. The widespread fame, outstanding reputation, and significant goodwill associated with the BVLGARI brand have made the BVLGARI Trademarks invaluable assets of Bulgari.

**The Defendants**

17. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

18. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

19. The success of the BVLGARI brand has resulted in significant counterfeiting of Bulgari's trademarks. Consequently, Plaintiff has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Bulgari has identified many fully interactive e-commerce stores offering counterfeit BVLGARI Products on online marketplace platforms such as PayPal, Amazon, Temu, and Walmart, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year—accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

20. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[3] *Id.*; See *also Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet,* 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

21. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold Counterfeit BVLGARI Products to residents of Illinois. Screenshots evidencing Defendants' infringing activities are attached as **Exhibit 2**.

22. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars from U.S. consumers. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Bulgari has not licensed or authorized Defendants to use any of the BVLGARI Trademarks and none of the Defendants are authorized retailers of genuine BVLGARI Products.

23. Many Defendants also deceive unknowing consumers by using the BVLGARI Trademarks without authorization within the content, text, and/or meta tags of their e-commerce

[5] *Id.* at 22.
[6] *Id.* at 39.
[7] Chow, *supra* note 4, at 186-87.

stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for BVLGARI Products. Other e-commerce stores operating under the Seller Aliases omit using BVLGARI Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for BVLGARI Products.

24. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

25. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit BVLGARI Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

26. Defendants are collectively causing harm to BVLGARI's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

27. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as

sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

28. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Bulgari's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Bulgari. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

29. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit BVLGARI Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Bulgari, have knowingly and willfully used and continue to use the BVLGARI Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit BVLGARI Products into the United States and Illinois over the Internet.

30. Defendants' unauthorized use of the BVLGARI Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit BVLGARI Products, including the sale of Counterfeit BVLGARI Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Bulgari.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

31. Bulgari hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

32. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered BVLGARI Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The BVLGARI Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from BVLGARI Products offered, sold, or marketed under the BVLGARI Trademarks.

33. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the BVLGARI Trademarks without Bulgari's permission.

34. Bulgari is the exclusive owner of the BVLGARI Trademarks. Bulgari's United States Registrations for the BVLGARI Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Bulgari's rights in the BVLGARI Trademarks and are willfully infringing and intentionally using counterfeits of the BVLGARI Trademarks. Defendants' willful, intentional, and unauthorized use of the BVLGARI Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit BVLGARI Products among the general public.

35. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36. Bulgari has no adequate remedy at law and, if Defendants' actions are not enjoined, Bulgari will continue to suffer irreparable harm to its reputation and the goodwill of its well-known BVLGARI Trademarks.

37. The injuries and damages sustained by Bulgari have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit BVLGARI Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

38. Bulgari hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit BVLGARI Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Bulgari or the origin, sponsorship, or approval of Defendants' Counterfeit BVLGARI Products by Bulgari.

40. By using the BVLGARI Trademarks in connection with the sale of Counterfeit BVLGARI Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit BVLGARI Products.

41. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit BVLGARI Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

42. Bulgari has no adequate remedy at law and, if Defendants' actions are not enjoined, Bulgari will continue to suffer irreparable harm to its reputation and the associated goodwill of the BVLGARI brand.

## PRAYER FOR RELIEF

WHEREFORE, Bulgari prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the BVLGARI Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine BVLGARI Product or is not authorized by Bulgari to be sold in connection with the BVLGARI Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine BVLGARI Product or any other product produced by Bulgari, that is not Bulgari's or not produced under the authorization, control, or supervision of Bulgari and approved by Bulgari for sale under the BVLGARI Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit BVLGARI Products are those sold under the authorization, control, or supervision of Bulgari, or are sponsored by, approved by, or otherwise connected with Bulgari;

   d. further infringing the BVLGARI Trademarks and damaging Bulgari's goodwill; and

   e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Bulgari, nor authorized by Bulgari to be sold or offered for sale, and which bear any of Bulgari's trademarks, including

the BVLGARI Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Bulgari's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as Amazon, PayPal, Temu, and Walmart (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the BVLGARI Trademarks;

3) That Defendants account for and pay to Bulgari all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the BVLGARI Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Bulgari be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the BVLGARI Trademarks;

5) That Bulgari be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 15th day of January 2026.

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Luana Faria de Souza
Rachel M. Ackerman
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
lfaria@gbc.law
rackerman@gbc.law

*Counsel for Plaintiff Bulgari, S.p.A.*